**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 26, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

DARIUS RASHAD JOHNSON,

    Defendant - Appellant.

Nos. 17-6165 & 17-6195

_____

**Appeals from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. Nos. 5:09-CR-00128-HE-1 & 5:16-CV-00344-HE)**
_____

Kyle E. Wackenheim, Assistant Federal Public Defender, Oklahoma City, Oklahoma for Defendant-Appellant.

Steven W. Creager, Assistant United States Attorney (Robert J. Troester, Acting United States Attorney, with him on the briefs), Oklahoma City, Oklahoma for Plaintiff-Appellee.

_____

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

Federal sentences can be affected by a defendant's classification as an armed career criminal or a career offender. Both classifications underlie these appeals, which grew out of the sentencing and resentencing of Mr.

Darius Johnson for possessing cocaine with intent to distribute (21 U.S.C. § 841(a)(1)) and being a felon in possession of a firearm (18 U.S.C. § 922(g)).

For these offenses, the district court initially imposed concurrent prison terms of 192 months, relying in part on Mr. Johnson's classification as an armed career criminal because of three prior convictions for violent felonies.[1] The district court later vacated this sentence, concluding that one of the three prior convictions had not involved a violent felony. Having vacated the sentence, the court resentenced Mr. Johnson to concurrent prison terms of 120 months and 128 months, relying in part on his classification as a career offender because of two prior convictions for crimes of violence.

The government appeals the vacatur of the initial sentence, and Mr. Johnson appeals the new sentence. We affirm in both appeals.

---

[1]    The appellate record does not contain a transcript or recording of the sentencing hearing. But the probation office stated that at the initial sentencing, the district court had classified Mr. Johnson as an armed career criminal. To determine whether this statement is correct, we have taken judicial notice of the recording taken at the sentencing hearing. *See United States v. Duong*, 848 F.3d 928, 930 n.3 (10th Cir. 2017) (taking judicial notice of district court filings in a related case). The recording confirms that the district court classified Mr. Johnson as an armed career criminal under the Armed Career Criminal Act.

**I.     Mr. Johnson had three prior felony convictions, creating issues involving his status as an armed career criminal and a career offender.**

Under the Armed Career Criminal Act, defendants are classified as armed career criminals after being convicted of three violent felonies. 18 U.S.C. § 924(e)(1). When an armed career criminal is convicted of unlawfully possessing a firearm (after a prior felony conviction), the Act creates a mandatory minimum sentence of fifteen years' imprisonment. *Id.*; *see* 18 U.S.C. § 922(g)(1).

Under the federal sentencing guidelines, defendants are classified as career offenders after two convictions for felonies constituting crimes of violence. USSG § 4B1.1(a). This classification triggers enhancement of the guideline range in future sentences. USSG § 4B1.1(b).

To determine whether Mr. Johnson was an armed career criminal and a career offender, we must consider his three prior felony convictions in Oklahoma:

1.     use of a vehicle to facilitate the intentional discharge of a firearm

2.     assault and battery with a dangerous weapon

3.     assault and battery on a law enforcement officer

The three prior convictions present two issues:

1.     Did the three prior convictions involve violent felonies, triggering classification as an armed career criminal?

> 2. Did two or more of the prior convictions involve crimes of violence, triggering classification as a career offender?

## II. After sentencing Mr. Johnson as an armed career criminal, the district court ordered vacatur and resentencing based on a new Supreme Court opinion.

The first issue grew out of a new Supreme Court opinion invalidating part of the Armed Career Criminal Act. *Johnson v. United States*, 135 S. Ct. 2551, 2556–63 (2015). In light of this opinion, the district court concluded that assault and battery on a law enforcement officer could no longer constitute a violent felony, preventing application of the 15-year mandatory minimum. But the court found that Mr. Johnson had prior convictions in Oklahoma for two crimes of violence:

> 1. assault and battery with a dangerous weapon
>
> 2. use of a vehicle to facilitate the intentional discharge of a firearm

Given these convictions, the district court resentenced Mr. Johnson as a career offender under the sentencing guidelines.

In his appeal, Mr. Johnson challenges his classification as a career offender. He concedes one prior conviction for a crime of violence (assault and battery with a dangerous weapon). But he denies that the use of a vehicle to facilitate the intentional discharge of a firearm would constitute a second crime of violence.

4

In its own appeal, the government contends that Mr. Johnson had three convictions for violent felonies, triggering a mandatory minimum sentence of fifteen years' imprisonment for possessing a firearm after a prior felony conviction. Mr. Johnson does not dispute the existence of two prior convictions for violent felonies, but the government contends that he had a third one: assault and battery on a law enforcement officer. Pointing to this conviction, the government argues that Mr. Johnson qualifies as an armed career criminal.

### III. The government's appeal: Battery on a law enforcement officer is not a violent felony, precluding application of the Armed Career Criminal Act's 15-year mandatory minimum.

Mr. Johnson's status as an armed career criminal turns on his past conviction for assault and battery on a law enforcement officer. This conviction had been based on Okla. Stat. tit. 21, § 649(B), which criminalizes

- "battery" or "assault and battery" on a law enforcement officer

- while the officer was performing his or her duties.

Okla. Stat. tit. 21, § 649(B). We compare the state's definition of this crime to the Armed Career Criminal Act's definition of a "violent felony." Under the Act, a prior crime could qualify as a violent felony under the Elements Clause, the Enumerated-Offense Clause, or the Residual Clause.

5

18 U.S.C. § 924(e)(2)(B). These clauses provide three alternative definitions of a violent felony:

1. Elements Clause: An element of the offense includes the use, attempted use, or threatened use of physical force against another person. 18 U.S.C. § 924(e)(2)(B)(i).

2. Enumerated-Offense Clause: The offense is burglary, arson, extortion, or a crime involving the use of explosives. 18 U.S.C. § 924(e)(2)(B)(ii).

3. Residual Clause: The crime otherwise creates "a serious potential risk of physical injury to another." *Id.*

The government concedes that in deciding on the initial sentence, the district court had invoked the Residual Clause, which was later invalidated as unconstitutionally vague. *Johnson v. United States*, 135 S. Ct. 2551, 2556–63 (2015). Given the invalidity of the Residual Clause, the government concedes that the district court had erred in imposing the initial sentence. Despite this concession, the government argues that the error was harmless because § 649(B) qualifies as a violent felony under the Elements Clause.

A crime may qualify as a violent felony under either the modified categorical approach or the categorical approach. *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017). We conclude that the modified categorical approach does not apply here because the statute of conviction—§ 649(B)—is indivisible. We thus conclude that

6

- a conviction under § 649(B) does not fall within the Armed Career Criminal Act's Elements Clause and

- Mr. Johnson was not an armed career criminal subject to the 15-year mandatory minimum.

## A.    Standard of Review

The government bears the burden of demonstrating harmlessness of the constitutional error in the initial sentence. *United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018). To satisfy this burden, the government must show that Mr. Johnson would have qualified as an armed career criminal even without reliance on the Residual Clause. *Id.* at 873.

## B.    The Modified Categorical Approach and Divisibility

The government urges us to apply the modified categorical approach and treat the conviction under § 649(B) as a violent felony under the Elements Clause. Under the modified categorical approach, we consider a limited class of documents to determine whether a crime necessarily includes elements that would constitute a violent felony. *Shepard v. United States*, 544 U.S. 13, 26 (2005). If these documents show that a violation of § 649(B) would necessarily qualify as a violent felony, the crime would constitute a violent felony under the modified categorical approach. *United States v. Degeare*, 884 F.3d 1241, 1245 (10th Cir. 2018).

But the modified categorical approach can be used only if the statute of conviction is divisible. *Descamps v. United States*, 570 U.S. 254, 263–

64 (2013); *see also* p. 19, below. And a statute is divisible only if it lists elements in the alternative, effectively defining separate crimes. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Even when a statute contains alternatives, it is considered indivisible if the alternatives constitute means rather than elements. *Id.* "'Elements' are the parts of a statute that the prosecution must prove; 'means' are alternative factual methods of committing a single element." *United States v. Hamilton*, 889 F.3d 688, 692 (10th Cir. 2018). A statute containing alternatives is divisible only if we are certain that the alternatives are elements rather than means. *United States v. Degeare*, 884 F.3d 1241, 1248 (10th Cir. 2018).

As the government points out, § 649(B) does contain two alternatives:

1.     Battery on a law enforcement officer and

2.     Assault and Battery on a law enforcement officer.

Do these alternatives constitute two separate crimes, with separate sets of elements? Or are they simply different means of committing a single crime?

To decide whether the alternatives constitute elements or means, we may consider three sources:

1.     state-court opinions

2.     the text of the statute

8

3.     the record of conviction

*Mathis*, 136 S. Ct. at 2248–49. Each source may definitively show whether a statutory alternative constitutes elements or means. *Id.* at 2256. If none are definitive, however, the statute must be treated as indivisible. *Hamilton*, 889 F.3d at 692.

The government contends that "battery" and "assault and battery" are alternative elements, making § 649(B) divisible. But we cannot derive certainty from the pertinent state-court opinions, the text of the statute, or the record of conviction.[2] We therefore consider the statute indivisible, preventing application of the modified categorical approach. *See id.*

### 1.     Oklahoma Opinions

The government contends that

- Oklahoma opinions classify "battery" and "assault and battery" as separate convictable offenses and

- Oklahoma's uniform jury instructions treat "battery" and "assault and battery" as alternative elements.

The government relies partly on *Avants v. State*, 660 P.2d 1051 (Okla. Crim. App. 1983). In *Avants*, the court addressed Okla. Stat. tit. 21,

---

[2]     The district court relied on a brief reference to the Elements Clause in *United States v. Smith*, 652 F.3d 1244 (10th Cir. 2011). But in *Smith*, we did not consider whether § 649(B) was subject to the modified categorical approach. 652 F.3d at 1247. We had instead based our holding on the Residual Clause, which the Supreme Court later struck down as unconstitutionally vague. *Id.*

§ 652, which governed assault and battery when committed with a deadly weapon, through means likely to cause death, or in an attempt to kill. *See Avants*, 660 P.2d at 1051–52. In addressing the scope of the law, the court referred to § 645, which covers "assault, battery, or assault and battery." *Id*. at 1052. The court observed that in § 645, assault is considered a "separate convictable offense." *Id.* This observation does not definitively resolve our issue because of (1) the statutory differences between § 645 and § 649(B) and (2) the court's conception of "battery."

The *Avants* court considered a different Oklahoma statute (§ 645), so its decision does not bind us in considering § 649(B). And even though § 645 bears some similarities to § 649(B), the two sections also contain differences. Section 645's first alternative contains three alternative elements: "[1] assault, [2] battery, or [3] assault and battery." Okla. Stat. tit. 21, § 645. In § 649(B), only two alternatives exist: (1) battery and (2) assault and battery. Okla. Stat. tit. 21, § 649(B). Given these differences between § 645 and § 649(B), the discussion in *Avants* does not definitively tell us whether the alternatives in § 649(B) constitute elements or means. *See Jimenez v. Sessions*, 893 F.3d 704, 714–15 (10th Cir. 2018) (concluding that dicta in two state appellate opinions did not definitively resolve whether the alternatives constituted elements or means).

The *Avants* court also appeared to suggest that "battery" and "assault and battery" are the same crime rather than different crimes with distinct sets of elements. In *Avants*, the court stated that (1) every battery includes an assault and (2) an assault and battery takes place when the assault "culminates in a battery." *Avants*, 660 P.2d at 1052. Because every battery includes an assault, the court concluded that all battery convictions necessarily involve both an assault and a battery. *Id. Avants* thus suggests that "battery" and "assault and battery" are the same crime rather than different crimes with different elements.

Given the statutory differences and the court's conception of "battery," *Avants* does not resolve with certainty whether "battery" and "assault and battery" are elements or means. Given this uncertainty, the government points to Oklahoma's uniform jury instructions, arguing that they treat "battery" and "assault and battery" as alternative elements rather than means. "Like Oklahoma case law, the Oklahoma uniform jury instructions provide useful guidance on the content of state law." *United States v. Hamilton*, 889 F.3d 688, 693 (10th Cir. 2018).

For prosecutions involving § 649, the uniform jury instructions list five elements:

First, **(an assault)/(a battery)/(an assault and battery)**;

Second, upon a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**;

11

> Third, known by **defendant(s)** to be a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**;
>
> Fourth, without justifiable or excusable cause;
>
> Fifth, committed while **the (police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)** was in the performance of **his/her** duties as a **(police officer)/sheriff/(deputy sheriff)/(highway patrolman)/(corrections personnel)/(State peace officer)**.

Okla. Unif. Jury Instr. CR 4-16 (emphases in original). The first element contains three alternatives—(1) assault, (2) battery, and (3) assault and battery—separated by slashes.

An introduction to the instructions states that "[s]lashes are used . . . to indicate that the judge should select all alternatives that are supported by the evidence." Okla. Unif. Jury Instr. CR Cross Reference; *see Runnels v. State*, 496 P.3d 614, 619 (Okla. Crim. App. 2018) ("The slash symbol is intended to cause the trial court to elect the alternative(s) which most accurately fits the case at trial."). The provision adds that "[i]n some cases, there may have been evidence offered for more than one alternative, and if so, the trial judge should include them in the disjunctive." Okla. Unif. Jury Instr. CR Cross Reference.

"Battery" and "assault and battery" are bunched into the first element and separated by slashes. When supported by the evidence, the judge could instruct the jury on both "battery" and "assault and battery." Thus, the

12

bunching of alternatives into a single element could suggest that these alternatives serve only as different means to satisfy a single element. *See United States v. Hamilton*, 889 F.3d 688, 694–95 (10th Cir. 2018) (classifying statutory alternatives, which were separated by slashes in the Oklahoma uniform jury instructions, as alternative means); *see also United States v. Titties*, 852 F.3d 1257, 1271 (10th Cir. 2017) (stating that an Oklahoma uniform jury instruction supported classification as means, rather than elements, because the alternatives had been bunched into a single element).

As the government points out, however, one of the three alternatives in the first element is "assault." Okla. Unif. Jury Instr. CR 4-16. And assault on a law enforcement officer constitutes a separate crime because it triggers a milder punishment than if the conduct had constituted (1) a battery or (2) an assault and battery. *Compare* Okla. Stat. tit. 21, § 649(A), *with* tit. 21, § 649(B); *see Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (stating that if statutory alternatives entail different punishments, the alternatives constitute elements rather than means). Because assault on a law enforcement officer constitutes a separate crime, the government contends that the other two alternatives ("battery" and "assault and battery") must also constitute separate crimes. But this conclusion does not necessarily follow.

13

The government's contention assumes that if one of the three alternatives is a separate crime, the other two alternatives must also be separate crimes. A contrary interpretation of the uniform jury instructions is also reasonable: one alternative ("assault") is a separate crime, while the other two alternatives ("battery" and "assault and battery") are separate means of committing the same crime. This interpretation would match the structure of § 649, which criminalizes "assault" on a law enforcement officer in subsection A and "battery or assault and battery" on a law enforcement officer in subsection B. Given the reasonableness of this interpretation, classifying assault as a separate crime does not necessarily mean that the other two alternatives ("battery" and "assault and battery") must be separate crimes.

\* \* \*

Oklahoma's opinions and uniform jury instructions do not show with certainty whether the statutory alternatives constitute elements or means. We must therefore continue with our inquiry on divisibility. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (noting that "if state law fails to provide clear answers," courts should continue with the analysis, considering the statutory text and the record of conviction).

14

## 2. The Text of the Statute

This inquiry proceeds with the statutory text. *United States v. Hamilton*, 889 F.3d 688, 696 (10th Cir. 2018). The version of § 649(B) in effect at the time of conviction provided:

> Every person who, without justifiable or excusable cause knowingly commits battery or assault and battery upon the person of a police officer, sheriff, deputy sheriff, highway patrolman, corrections personnel, or other state peace officer employed or duly appointed by any state governmental agency to enforce state laws while said officer is in the performance of his duties, upon conviction, shall be guilty of a felony punishable by imprisonment of not more than five (5) years in a state correctional institution or county jail for a period not to exceed one (1) year, or by a fine not exceeding Five Hundred Dollars ($500.00), or by both such fine and imprisonment.

Okla. Stat. tit. 21, § 649(B) (1999).[3] This text is ambiguous because it criminalizes "battery" or "assault and battery" without stating whether these are distinct sets of elements or simply different means of committing a single crime.

The government points to two opinions—*United States v. Taylor*, 843 F.3d 1215 (10th Cir. 2016), and *United States v. Mitchell*, 653 Fed. App'x 639 (10th Cir. 2016)—where we regarded other statutory language as divisible. But these opinions do not establish with certainty that § 649(B) is divisible.

---

[3] Oklahoma later adopted minor revisions to the statutory text.

15

Both discuss a single Oklahoma statute, Okla. Stat. tit. 21, § 645, which criminalizes assault, battery, and assault and battery with a sharp or dangerous weapon:

> Person who, with intent to do bodily harm and without justifiable or excusable cause, commits any assault, battery, or assault and battery upon the person of another with any sharp or dangerous weapon, or who, without such cause, shoots at another, with any kind of firearm, air gun, conductive energy weapon or other means whatever, with intent to injure any person, although without the intent to kill such person or to commit any felony, upon conviction is guilty of a felony punishable by imprisonment in the State Penitentiary not exceeding ten (10) years, or by imprisonment in a county jail not exceeding one (1) year.

Okla. Stat. tit. 21, § 645.

*Taylor* and *Mitchell* concluded that § 645 is divisible because it contains alternative elements:

1. "assault, battery, or assault and battery" with a "sharp or dangerous weapon"

2. "shoot[ing] at another" with a gun or similar means

*Taylor*, 843 F.3d at 1222; *Mitchell*, 653 F. App'x at 643. Because § 645 contains alternative elements, *Taylor* and *Mitchell* regarded the statute as divisible, triggering the modified categorical approach. *Taylor*, 843 F.3d at 1221–23; *Mitchell*, 653 F. App'x at 642–43. In applying this approach, the court observed that the first alternative element contained two sub-alternatives:

1. "assault, battery, *or* assault and battery"

2. with "a sharp *or* dangerous weapon."

*Taylor*, 843 F.3d at 1222 (emphasis in original); *Mitchell*, 653 F. App'x at 643 (emphasis in original).

The government focuses on this observation in *Taylor* and *Mitchell*, arguing that (1) these opinions treated "assault, battery, or assault and battery" as "sub-alternative" elements and (2) as a result, "battery" and "assault and battery" must also constitute alternative elements. *Mitchell* is unpublished, so it is not binding. Tenth Cir. R. 32.1(A). And *Taylor* didn't specify whether the alternatives in the first element (assault, battery, and assault and battery) constituted separate elements or means. Instead, the court held only that together, the three sub-alternatives constituted a single element. 843 F.3d at 1222.

In applying the modified categorical approach, *Taylor* focused on a second distinct element, consisting of either (1) a sharp weapon or (2) a dangerous weapon. *Id.* at 1223. Given the existence of these alternative sub-elements, the court reviewed the charging document and learned that the defendant had been charged with using a dangerous weapon to inflict both (1) an assault and (2) a battery. *Id.* at 1223. The use of a dangerous weapon proved decisive: when coupled with either an assault or a battery, the use of a dangerous weapon would constitute a violent felony. *Id.* at

17

1223-24. So the court had no need to decide whether assault, battery, or assault and battery constituted separate elements or means.

\* \* \*

The text of § 649(B) does not establish with certainty whether the statutory alternatives ("battery" and "assault and battery") constitute elements or means. So we cannot determine whether § 649(B) is divisible based on the statutory text alone. We therefore peek at the record of Mr. Johnson's prior conviction to determine whether the statutory alternatives in § 649(B) constitute elements or means. *Mathis v. United States*, 136 S. Ct. 2243, 2256–57 (2016).

### 3.    The Record of Conviction

The government contends that this peek shows that the alternatives constitute elements. We are not so sure.

Mr. Johnson was charged with "assault and battery upon a police or other law officer." Supp. R., vol. 1 at 44. According to the government, this charge means that the alternatives constitute elements because the charging document would have otherwise encompassed both alternatives ("battery" and "assault and battery").

But under Oklahoma law, the charging documents had to include not just the elements of a crime but also enough facts to enable a defendant to prepare for trial. *Ross v. State*, 147 P.2d 797, 799 (Okla. Crim. App. 1944).

18

So the prosecutor's decision to charge "assault and battery" (rather than "battery" or "assault and battery") does not necessarily mean that the alternatives constitute elements. *See United States v. Hamilton*, 889 F.3d 688, 698 (10th Cir. 2018) (stating that reference to a single statutory alternative in an Oklahoma charging document did not mean that the statutory alternatives constituted elements). So a peek at the record does not clarify whether the alternatives in § 649(B) constitute elements or means.

* * *

Oklahoma opinions, the text of § 649(B), and the record of conviction do not establish with certainty whether the statutory alternatives constitute elements or means. This uncertainty requires us to treat § 649(B) as indivisible. Because § 649(B) is indivisible, we cannot apply the modified categorical approach to determine whether Mr. Johnson's conviction under § 649(B) involved a violent felony. *See Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016) (stating that if statutory alternatives constitute means, the court cannot apply the modified categorical approach); *see also* pp. 7–8, above.

### C.    Categorical Approach

Given the unavailability of the modified categorical approach, we apply the categorical approach to decide whether a violation of § 649(B)

19

constituted a violent felony. *United States v. Hammons*, 862 F.3d 1052, 1054 (10th Cir. 2017). In applying the categorical approach, we focus on the elements of the crime rather than the specifics of the defendant's conduct. *United States v. Titties*, 852 F.3d 1257, 1265 (10th Cir. 2017). A crime is categorically a violent felony only if the crime has as an element the "use, attempted use, or threatened use of physical force against another person." 18 U.S.C. § 924(e)(2)(B)(i); *see United States v. Pam*, 867 F.3d 1191, 1203 (10th Cir. 2017). The term "physical force" refers to "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Under the categorical approach, we consider whether the elements of § 649(B) would require the use of violent force. *See Pam*, 867 F.3d at 1203. Section 649(B) can be violated in two different ways:

1. Battery on a law enforcement officer

2. Assault and Battery on a law enforcement officer

Okla. Stat. tit. 21, § 649(B). A conviction would require violent force only if both statutory alternatives necessarily require violent force.

The government argues that both a "battery" and an "assault and battery" would constitute a violent felony. For this argument, we may assume (for the sake of argument) that assault and battery constitutes a violent felony. Given this assumption, we must determine whether a

20

battery alone would constitute a violent felony. We conclude that it would not.

Oklahoma's crime of battery does not require violent force capable of causing physical pain or injury because this crime can be committed with only the slightest touching. *Steele v. State*, 778 P.2d 929, 931 (Okla. Crim. App. 1989)[4]; *see United States v. Smith*, 652 F.3d 1244, 1247 (10th Cir. 2011) ("[U]nder Oklahoma law, mere offensive touching satisfies the requirement for force in a battery."). As a result, battery on a law enforcement officer does not constitute a violent felony. *See Smith*, 652 F.3d at 1246–47 (stating that an Oklahoma statute, which criminalizes a juvenile's battery against an employee of the state's Office of Juvenile Affairs, "clearly" reaches conduct falling outside the Armed Career Criminals Act's Elements Clause). In these circumstances, the district court properly concluded that the conviction under § 649(B) did not involve a violent felony.

---

[4]     In a footnote, the government suggests that recent opinions may have cast doubt on *Steele*: "Recent decisions interpreting the [Armed Career Criminal Act's] elements clause suggest *Steele*'s statement may not even foreclose the use of felony battery as an [Armed Career Criminal Act] predicate." Gov't's Second Br. on Cross-App. at 30 n.6. This suggestion in a footnote does not adequately develop an argument that *Steele* has been superseded by more recent Oklahoma opinions. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) (en banc) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

* * *

We conclude that (1) the district court's error in the initial sentence was not harmless and (2) the court properly vacated that sentence.

After considering Okla. Stat. tit. 21, § 649(B), we lack certainty over whether the alternatives constitute elements. So we regard the statute as indivisible, precluding use of the modified categorical approach. Absent this approach, Mr. Johnson's conviction could have been based on battery alone, which would have required only the slightest touching. So the conviction under Okla. Stat. tit. 21, § 649(B) did not involve a violent felony under the Elements Clause. We therefore affirm in the government's appeal.

**IV. Mr. Johnson's appeal: The use of a vehicle to facilitate the intentional discharge of a firearm was a crime of violence, triggering enhancement of the guideline range.**

In his own appeal, Mr. Johnson challenges the new sentence, contending that the use of a vehicle to facilitate the intentional discharge of a firearm is not a crime of violence.[5] But Mr. Johnson concedes that this challenge is foreclosed under *United States v. Hammons*, 862 F.3d 1052 (10th Cir. 2017). *See* Appellant's Opening Br. at 14 (acknowledging that

---

[5]      Prior to the initial sentence, the probation office recommended classification of this crime as a crime of violence, and Mr. Johnson did not object. At the initial sentencing hearing, however, the district court did not say whether it regarded this crime as a crime of violence. *See* note 1, above (taking judicial notice of the recording of the initial sentencing hearing).

"this Court is currently bound by *Hammons*"). We agree with this concession.

In *Hammons*, we held that an Oklahoma conviction for the use of a vehicle to facilitate the intentional discharge of a firearm qualifies as a violent felony, triggering classification as an armed career criminal. 862 F.3d at 1057. Our panel is bound by *Hammons*. *See Bates v. Dep't of Corrs.,* 81 F.3d 1008, 1011 (10th Cir. 1996).

The only issue remaining under *Hammons* is whether to draw a different conclusion for classification as a career offender. In *Hammons*, we applied the definition for a "violent felony," which is "virtually identical" to the definition of a "crime of violence." *Id.*; s*ee United States v. Wray*, 776 F.3d 1182, 1184–85 (10th Cir. 2015) (stating that these definitions are "virtually identical"). In determining what constitutes a crime of violence, "we may [therefore] look for guidance to cases" interpreting the virtually identical definition of a "violent felony." *United States v. Wise*, 597 F.3d 1141, 1145 (10th Cir. 2010).

With guidance from *Hammons*, we classify this crime (using a vehicle in Oklahoma to facilitate the intentional discharge of a firearm) as a crime of violence, triggering enhancement of the guideline range. We therefore reject Mr. Johnson's challenge to the new sentence and affirm in his appeal.

## V.    Conclusion

We affirm in the government's appeal. When imposing the initial sentence, the district court classified Mr. Johnson as an armed career criminal because he had three prior convictions for violent felonies. The government concedes that this classification was erroneous because the district court had relied on the Residual Clause, which the Supreme Court later struck down as unconstitutional. This constitutional error was not harmless because one of the three prior convictions could have been based on battery of a law enforcement officer, which does not constitute a violent felony. Given this possibility, the district court needed to vacate the initial sentence; we therefore affirm the vacatur of Mr. Johnson's initial sentence.

We also affirm in Mr. Johnson's appeal. Mr. Johnson's conviction for using a vehicle to facilitate the discharge of a firearm (Okla. Stat. tit. 21, 652(B)) constitutes a crime of violence. Given the concession of another crime of violence, the district court did not err in sentencing Mr. Johnson as a career criminal under the sentencing guidelines. We therefore affirm Mr. Johnson's new sentence.